# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHARLES TURPIN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-2394 (RC) |
| | : | | |
| v. | : | Re Document No.: | 5 |
| | : | | |
| DARNELL RAY, *et al.*, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS ROWLEY, STRANGE, AND THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Charles Turpin brings suit against Metropolitan Police Department Officers Anthony Rowley and Shannon Strange, the District of Columbia, and landlord Darnell Ray. Mr. Turpin asserts claims under 42 U.S.C. § 1983 against Officers Rowley and Strange and the District of Columbia for excessive force, in violation of his Fourth Amendment rights, and substantive due process infringements of protected liberty and property interests, in violation of his Fifth Amendment rights.[1] He has also brought common law claims against Officers Rowley

---

[1] The substantive due process claim in Mr. Turpin's amended complaint alleges violations of both his Fifth and Fourteenth Amendment rights. Second Am. Compl. ¶ 58, ECF No. 1-3. However, as Defendants point out, *see* Defs.' Mem. P. & A. Supp. Mot. Dismiss ("Defs.' MTD") 6, ECF No. 5 (citing *Williams v. District of Columbia*, 174 F. Supp. 3d 410, 413 (D.D.C. 2016), the Fourteenth Amendment does not apply to the District of Columbia as a matter of law, *Butera v. District of Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001) (stating that the District of Columbia, which is not a state, is subject to the Due Process Clause of the Fifth Amendment, not the Fourteenth Amendment). Because of this controlling rule and because, moreover, Plaintiff concedes this point and states that "[a]ny references to the Fourteenth Amendment [are] unnecessary surplusage which can be deleted and not considered in the analysis of any of the Counts" of Mr. Turpin's complaint, Pl.'s Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n") 9, ECF No. 7, the Court dismisses the Fourteenth Amendment component of

and Strange and the District of Columbia for trespass, false arrest, and malicious prosecution; against Officers Rowley and Strange, the District of Columbia, and his former landlord, Darnell Ray, for wrongful eviction; and an individual claim against Mr. Ray for conversion. For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Charles Turpin is a District of Columbia resident who, prior to commencement of this action, had been a long-term tenant of Darnell Ray. Second Am. Compl. ¶¶ 9–10, ECF No. 1-3. Mr. Turpin and his "long-time companion," Ms. Miles, resided in an apartment rented from Mr. Ray for at least 10 years. *Id.* ¶ 9. Ms. Miles's name was on the lease. *Id.* After Ms. Miles passed away in March 2016, Mr. Ray indicated to Mr. Turpin that he wished to sell the apartment and asked Mr. Turpin to vacate the premises. *Id.* ¶¶ 12–14. In July 2016, Mr. Ray initiated a landlord-tenant case against Mr. Turpin seeking repossession of the apartment. *Id.* ¶ 15. The lawsuit resulted in a judgment of possession against Mr. Turpin, and on October 13, 2016, the court issued a writ of restitution authorizing Mr. Turpin's eviction. *Id.* ¶ 15–16. The writ was set to expire seventy-five days from its issuance. *Id.* ¶ 16.

In the District of Columbia, evictions are carried out by the U.S. Marshals Service ("Marshals Service," "U.S. Marshals," or "Marshals"). *See* D.C. Code § 13-302 ("[T]he United States Marshal for the District of Columbia . . . shall serve the process of . . . the Superior Court of the District of Columbia."); *see also Mendes v. Johnson*, 389 A.2d 781, 786–87 (D.C. 1978) (holding evictions may only be executed by appropriate legal process, and not by landlord self-help). Acting pursuant to this rule, Mr. Ray paid the required eviction fee to the Marshals Service; however, Mr. Turpin was never officially removed by the Marshals and continued to

---

Plaintiff's substantive due process claim (Count I).

occupy the residence.  Second Am. Compl. ¶¶ 17–19.  On December 27, 2016, the writ of restitution for Mr. Turpin's eviction expired without the Marshals Service taking any action to execute the eviction.  *Id.* ¶ 18.  At some point between the date on which the court issued the writ of restitution and when it expired, Mr. Ray changed the locks of the apartment, barring Mr. Turpin from entry.  *Id.* ¶ 19.  As a result of the changed locks, Mr. Turpin, whose possessions and personal belongings remained in the apartment, gained entry through a rear window of the unit.[2]  *Id.* ¶ 20.

After Mr. Turpin accessed the apartment, he received no communication from Mr. Ray for "a couple of days."  *Id.* ¶ 22.  Mr. Turpin's next interaction with Mr. Ray occurred on December 29, 2016, when Mr. Ray called police officers to the premises.  *Id.*  During the initial dispatch, the officers that arrived at the scene did not enter the apartment and ultimately declined to intervene in what they deemed a civil matter between a landlord and tenant.  *Id.* ¶ 23.  Later that day, Mr. Ray again called the police, and different officers, Officers Rowley and Strange, were dispatched to the premises.  *Id.* ¶ 26.  After speaking with Mr. Ray, who informed them of the eviction proceedings, the officers "indicated to Mr. Turpin that he had been evicted" and needed to come out of the apartment.  *Id.* ¶ 27.  During that conversation, Mr. Turpin acknowledged that while eviction proceedings had been entered against him, the Marshals

---

[2] The Court notes that in his previous complaint, Mr. Turpin stated that he gained entry by breaking through the rear door.  *Turpin v. Ray*, 319 F. Supp. 3d 191, 194 (D.D.C. 2018).  For present purposes, though, the amended complaint is the operative one, *see Pinson v. U.S. Dep't of Justice*, 69 F. Supp. 3d 108, 113 (D.D.C. 2014) (citing *Owens v. Republic of Sudan,* 412 F. Supp. 2d 99, 117 (D.D.C. 2006), *aff'd and remanded on other grounds,* 531 F.3d 884 (D.C. Cir. 2008)), and the Court accepts the plaintiff's factual allegations as true at the motion to dismiss stage, *see, e.g.*, *United States v. Phillip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  The Court thus credits Mr. Turpin's current statement that he gained entry through a window.  In any event, this factual discrepancy does not alter the underlying point: after Mr. Ray changed the apartment locks, Mr. Turpin undertook self-help to access the unit and was occupying the residence through forced entry for several days.  Second Am. Compl. ¶¶ 20–22.

Service had yet to remove him from the apartment. *Id.* ¶ 29. Mr. Turpin further asserted that only the U.S. Marshalls had "the legal authority to evict him," pursuant to a writ authorizing an eviction; that the writ of restitution against him had expired; and that he had a right to remain in the apartment. *Id.* Mr. Turpin thus declined to exit the unit, *id.*, whereupon Officers Rowley and Strange entered the apartment, arrested Mr. Turpin, and forcibly removed him from the premises, *id.* ¶¶ 30–31. In the process of removing Mr. Turpin, an elderly man, from the apartment, Officers Rowley and Strange "brutally slammed Mr. Turpin to the hard floor, face first;" "continually rub[bed] Mr. Turpin's face on the floor causing bloody lacerations and abrasions to his face in addition to injuries to his eye and jaw;" "pounce[d] on Mr. Turpin with their full weight" and "knee[d] him in the back;" and "handcuffed and . . . dragged the semi-conscious Mr. Turpin down the stairs." *Id.* ¶ 31. These injuries were treated at the United Medical Center. *Id.* ¶ 34.

After his arrest, Mr. Turpin was initially charged with destruction of property and resisting arrest. *Id.* ¶ 33. Mr. Turpin was acquitted of all counts on July 10, 2017. *Id.* ¶ 35. On October 6, 2017, Mr. Turpin commenced an action in D.C. Superior Court, which the District of Columbia then removed to federal court. *See Turpin v. Ray* (*Turpin I*), 319 F. Supp. 3d 191, 194–95 (D.D.C. 2018). In *Turpin I*, this Court addressed Plaintiff's § 1983 claims of individual and municipal liability for alleged Fourth Amendment violations against Officer Rowley, Officer Strange, and the District of Columbia, as well as common law tort claims against Officer Rowley, Officer Strange, the District of Columbia, and Mr. Ray. *See id.* at 195. Ruling on Defendants' motion to dismiss, this Court dismissed on qualified immunity grounds the § 1983 claims against Officers Rowley and Strange; dismissed the § 1983 claim against the District of Columbia on the basis of Mr. Turpin's prior withdrawal of this municipal claim; and declined to

exercise supplemental jurisdiction over the remaining state law claims, which this Court remanded to D.C. Superior Court. *Id.* at 196–207.

Once back in D.C. Superior Court, Mr. Turpin filed a motion to amend his complaint on April 29, 2019, which was granted on May 31, 2019. *Turpin v. Ray*, No. 2017 CA 006761 B (D.C. Super. Ct. filed Oct. 6, 2017). Mr. Turpin's amended complaint altered his remaining common law claims and asserted new § 1983 claims against Officers Rowley and Strange as well as against the District of Columbia alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights. *See* Second Am. Compl. Officers Rowley and Strange then removed the case back to federal court. *See* Notice of Removal, ECF No. 1. Before the Court today are motions to dismiss from Officers Rowley and Strange and the District of Columbia.[3]

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). This statement must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a plaintiff fails to provide such a statement, then the defendant can move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

---

[3] Defendant Ray is not included in the motions to dismiss presently pending before the Court. *See* Second Am. Compl. at 1. In their notice of removal, Defendants Rowley, Strange, and the District of Columbia indicate that Mr. Ray's counsel has withdrawn representation and that they have not been able to ascertain whether Mr. Ray consents to removal. Notice of Removal at 2, ECF No. 1. Defendants also indicate that Mr. Turpin has been unable to serve Mr. Ray with process. *Id.* Because Defendants do not seek to dismiss claims against Mr. Ray and Mr. Turpin's claims against Mr. Ray are not properly before the Court, the Court discusses only the claims asserted against the District of Columbia and Officers Rowley and Strange.

A court considering a motion to dismiss presumes the complaint's factual allegations are true and must construe them in a light most favorable to the plaintiff. *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240 (D.C. Cir. 2018) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)); *Philip Morris, Inc.*, 116 F. Supp. 2d at 135. While it is not necessary for the plaintiff to plead all elements of a prima facie case in the complaint, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court need not accept a plaintiff's legal conclusions as true, *see Iqbal*, 556 U.S. at 678, nor presume the veracity of legal conclusions couched as factual allegations, *see Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will therefore not withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS[4]

Defendants Rowley and Strange and the District of Columbia present numerous arguments in support of their motion to dismiss Mr. Turpin's second amended complaint

---

[4] As mentioned previously, the facts as alleged in the second amended complaint are the operative facts, and these facts represent the sole factual allegations on which the Court relies in the following analysis. That said, the Court notes that there are certain significant differences, such as the alleged manner in which Mr. Turpin gained re-entry to the apartment, between the original complaint, the amended complaint, and the parties' other pleadings in this suit. *Compare, e.g.*, Second Am. Compl. ¶ 20 (stating that Mr. Turpin accessed the unit through the rear window) *with* Pl.'s Opp'n ("As a result, Mr. Turpin, believing that he had a right to do so re-entered his apartment by forcing open the rear door.") *and Turpin I*, 319 F. Supp. 3d at 194 (discussing facts in original complaint, which indicated entry by forcing open rear door). Because it is well-settled law that a plaintiff may not amend his pleading via a brief in opposition to a motion to dismiss, *see Friends of Animals v. Ashe*, 51 F. Supp. 3d 77, 85 n.2 (D.D.C. 2014) (quoting *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007)), *aff'd*, 808 F.3d 900 (D.C. Cir. 2015), the Court considers only the facts as alleged in Plaintiff's second amended pleading.

pursuant to Fed. R. Civ. P. 12(b)(6).[5]  Defs.' MTD 6–20.  First, Defendants assert that Mr.

Turpin's excessive force claims under the Fourth and Fifth Amendments in Count I merge, such

that his Fifth Amendment claim should be dismissed.  *Id.* at 7.  Defendants further contend that

Mr. Turpin's substantive due process claim pursuant to the Fifth Amendment (Count II) fails on

the merits because Plaintiff has not established a protected liberty interest.  *Id.* at 12–13.  And

regardless, Defendants argue that Officers Rowley and Strange are entitled to dismissal on

qualified immunity grounds for the two § 1983 claims of excessive force and substantive due

process violations.  *Id.* at 8.  Finally, Defendants argue that Mr. Turpin has failed to state a claim

for his common law claims of wrongful eviction, trespass, false arrest, and malicious

prosecution.  *Id.* at 13–20.

The Court first considers Plaintiff's federal law claims before turning to his state law

claims.  For the reasons set forth below, the Court grants in part Defendants' motion to dismiss

Mr. Turpin's federal law claims and grants in part Defendants' motion to dismiss with respect to

Mr. Turpin's state law claims.

## A.  § 1983 Claims Against Officers Rowley and Strange

Again, Mr. Turpin has brought two § 1983 claims against Officers Rowley and Strange.

First, he asserts that the officers violated his Fourth and Fifth Amendment rights against

---

That said, if these newly minted facts are unsupported, then Plaintiff, *and counsel*, may be subject to Rule 11 sanctions.  *See* Fed. R. Civ. P. 11(b), (c) (indicating that, in submissions to the court, "factual contentions [must] have evidentiary support, or, if specifically so identified, [must be] . . . likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery," or else such submissions are subject to sanction); *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991) (stating that a signed submission to the court "certifies to the court that the signer . . . has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both").

[5] Because Mr. Ray has not been served with process and did not file the instant motion to dismiss, all references to "Defendants" refer to the other three named defendants, unless otherwise indicated.

unreasonable seizure through the use of excessive force in arresting and removing him from his apartment. Second Am. Compl. ¶¶ 36–43. Second, he asserts that Officers Rowley and Strange violated his Fifth Amendment right to substantive due process when the officers disregarded Metropolitan Police Department ("MPD") and D.C. Municipal regulations that "provided fundamental protections to the plaintiff from interference and interventions by police officers in general civil matters and landlord and tenant disputes in particular." *Id.* ¶¶ 44–58. After addressing the threshold issue of whether Plaintiff's Fourth and Fifth Amendment claims merge in the manner that Defendants assert, the Court will address each of Mr. Turpin's claims in turn.

### 1. Merger of Claims

At the outset, Defendants argue that Mr. Turpin's claims should be analyzed only under the Fourth Amendment, and his Fifth Amendment claims should be dismissed. Defs.' MTD 7–8. This argument begins with the assertion that Mr. Turpin's Fourth and Fifth Amendment claims stem from the same underlying facts occurring in the context of Plaintiff's arrest. *Id.* at 7 ("Plaintiff's § 1983 Fifth Amendment claim against these Defendants is predicated upon allegations the Defendants Strange and Rowley wrongfully evicted him and used excessive force during the course of arresting him." (citing Second Am. Compl. ¶¶ 36–58)). From this perspective, because the Fifth Amendment's substantive due process protections against police misconduct apply so long as the claims are not "covered by a specific constitutional provision, such as the Fourth . . . Amendment," and because the claims here are covered by the Fourth Amendment, the claims merge. *Id.* (first quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998), then citing *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 36 (D.D.C. 2010)). Unsurprisingly, Plaintiff contests this gloss on his claims. On Plaintiff's account, there are two sets of arguments: (1) a "Fourth Amendment claim with respect to the use of excessive force"

and (2) a "Fifth Amendment substantive due process claim premised on violation" of a "liberty interest" created by a MPD circular's proscription on "police interference with landlord and tenant matters." Pl.'s Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n") 5, ECF No. 7. Plaintiff does not offer any rebuttal of the argument that the Fourth and Fifth Amendment claims merge in the excessive force context. *See generally id.*

The Court lands between the parties. On the one hand, Defendants are correct that substantive due process analysis is inappropriate in certain cases. *See Lewis*, 523 U.S. at 843. Here, the Court agrees that the excessive force claim, which is covered by the Fourth Amendment, is such a case. The excessive force claim involves alleged police misconduct "in the context of an arrest," such that it is, as Defendants assert, "most properly characterized as one invoking the protections of the Fourth Amendment" and not the 'substantive due process' approach [of the Fifth Amendment]." *Matthews*, 730 F. Supp. 2d at 36 (quoting *Graham v. Connor,* 490 U.S. 386, 394 (1989)). Thus, the Court dismisses the Fifth Amendment claim in the excessive force count of Plaintiff's complaint (Count I).

But the question of merger in the context of the substantive due process claim is a closer one. Defendants overread the cited precedent in contending that the same logic that applies in the excessive force context self-evidently sweeps in Plaintiff's substantive due process claim pursuant to the Fifth Amendment. As the very same case on which Defendants rely makes clear, substantive due process analysis is inappropriate "only if respondents' claim is 'covered by' the Fourth Amendment." *Lewis*, 523 U.S. at 843. Read in context and interpreting ambiguities in the complaint in Plaintiff's favor, Mr. Turpin's substantive due process claim is not derived from precisely the same alleged misconduct in the context of an arrest as the excessive force claim. Rather, Plaintiff's asserted liberty interest derives from the officers' violation of the MPD

circular that bars police involvement in landlord and tenant disputes, Metropolitan Police Department, CIR-01-03, *Landlord Self-Help Evictions* (Feb. 28, 2001) ("*Landlord Self-Help Evictions*"), and District of Columbia regulations that bar "police officers from rendering 'assistance in civil cases.'"  Am. Compl. ¶¶ 46–48 (quoting D.C. Mun. Regs. tit. 6–A, § 200.11).[6]

That said, Plaintiff cites no controlling case law to support the proposition that there is a constitutionally-protected liberty interest, grounded in the Fifth Amendment, that stems from this municipal circular and associated regulation.  And particularly because that same regulation authorizes "[m]embers of the force . . . [to] protect United States Marshals in the discharge of their duties," D.C. Mun. Regs. tit. 6–A, § 200.11, and Plaintiff seems to acknowledge that the U.S. Marshals could have evicted him while the writ of restitution was in effect, the Court is skeptical that Plaintiff has pleaded facts that establish a constitutional infringement of a liberty interest.  As the following analysis makes clear, though, the Court need not resolve this constitutional question and resolve the issue of merger to rule on Defendants' qualified immunity claim concerning the substantive due process allegations.  *Cf. Pearson v. Callahan*, 555 U.S. 223, 241 (2009) (cautioning, in qualified immunity analysis, against resolving constitutionality questions unless unavoidable).  For the reasons set forth in the following section, the Court dismisses Plaintiff's § 1983 claim for violation of his Fifth Amendment right to substantive due process on qualified immunity grounds.

---

[6] Although Plaintiff did not attach these documents to his complaint, the Court takes judicial notice of them as publicly-available materials without converting Defendants' motion to dismiss into one for summary judgment.  *See Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C.  Cir. 2005)).

2.  Qualified Immunity for § 1983 Substantive Due Process Claim[7]

The pending claims against Officers Rowley and Strange are brought pursuant to 42

U.S.C. § 1983.  As this Court explained in *Turpin I*, § 1983 authorizes a plaintiff to "bring a

claim against a defendant who, acting under color of state or local law, deprived him or her of

the 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."

319 F. Supp. 3d at 197 (quoting 42 U.S.C. § 1983); *see also id.* at 197 n.2 (noting that, under the

statute, the District of Columbia is considered a state for "purposes of a § 1983 claim").

Government officials are not necessarily liable in such a civil suit, though; rather, "[t]he doctrine

of qualified immunity . . . protects government officials from liability for corresponding civil

damages insofar as their 'conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *Id.* (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982).  In this way, qualified immunity doctrine "strike[s] a balance between

holding public officials righteously accountable for irresponsible acts, and shielding public

officials from any harassment or distraction that may inhibit their ability to reasonably perform

their duties."  *Id.* (citing *Pearson*, 555 U.S. at 231).

Courts apply a two-pronged analysis to determine whether a defendant is entitled to

qualified immunity.  A deciding court is to assess both "whether the facts alleged show that the

---

[7] As this Court previously explained, "[t]he Supreme Court has identified a clear mandate
for courts to resolve qualified immunity questions at the earliest possible stage of litigation."
*Turpin I*, 319 F. Supp. 3d at 196 (citing *Pearson*, 555 U.S. at 231).  Thus, the Court assesses
Officers Rowley and Strange's entitlement to qualified immunity here, at the motion to dismiss
phase.  Although courts in this Circuit have been reluctant to make qualified immunity
determinations prior to trial where there remain "disputed issues of fact regarding the
reasonableness of an alleged seizure," *Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 172 (D.D.C.
2018) (citing cases), the facts before this Court are undisputed.  Thus, coupled with extensive
Fourth Amendment case law regarding the question of the use of force by Officers Rowley and
Strange, qualified immunity can be assessed at this stage.

government official's conduct violated a 'constitutional right'" and "whether that right was 'clearly established' at the time of the incident." *Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 171 (D.D.C. 2018) (quoting *Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 100 (D.D.C. 2011). The order of the qualified immunity analysis is not set in stone, and "[c]ourts are "permitted to . . . decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Jiggetts*, 285 F. Supp. 3d at 171 (quoting *Pearson*, 555 U.S. at 236). Ultimately, "[g]iven the unique factual circumstances of each case, a qualified immunity determination hinges largely on an official's conduct in the particular situation and protects against reasonable mistakes of law, fact, or mixed questions of law and fact." *Turpin I*, 319 F. Supp. 3d at 197 (citing *Pearson*, 555 U.S. at 231, 236; *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985)).

Opting to take the second prong first in light of this suit's particular factual circumstances, the Court must determine whether a constitutional right against deprivation of liberty interests in the form of a ban on police involvement in landlord-tenant matters was "clearly established'" by the cited MPD circular and DC regulations. *Butera*, 235 F.3d at 646 (quoting *Wilson,* 526 U.S. at 615). A "clearly established" right such as—as relevant here—a liberty interest "may either be located in the Constitution itself or 'may arise from an expectation or interest created by state laws or policies.'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)); *see also Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995) ("State regulations may give rise to a constitutionally protected liberty interest if they contain substantive limitations on official discretion, embodied in mandatory statutory or regulatory language."). Because it is clear that

there is no liberty interest of the sort alleged in this case within the Constitution itself, the Court looks to the cited regulations and policies.

Here, Mr. Turpin argues that the "relevant . . . liberty interest is very clearly stated in the MPD Circular [CIR-01-03]," which "prohibit[s] police interference in landlord and tenant disputes" surrounding evictions. Pl's Opp'n 9; *see Landlord Self-Help Evictions*. In his complaint, Mr. Turpin also refers to D.C. Mun. Regs. tit. 6–A, § 200.11 (1972), which states that "[m]embers of the force shall not serve civil process; nor shall they render assistance in civil cases. They shall, however, prevent breaches of the peace and quell disturbances growing out of those matters and protect United States Marshals in the discharge of their duties." D.C. Mun. Regs. tit. 6–A, § 200.11; *see* Second Am. Compl. ¶ 45. This alleged violation implicates, on Plaintiff's account, Fifth Amendment substantive due process rights.

Defendants contend, however, this is not the sort of policy or regulation that creates a constitutionally-protected liberty interest. Defs.' Reply Supp. Mot. to Dismiss ("Defs.' Reply") 4, ECF 10.[8] Although state regulations may be the source of such a "constitutionally protected liberty interest if they contain substantive limitations on official discretion, embodied in mandatory statutory or regulatory language," Defendants maintain that the materials at hand are not these sorts of regulations. *Id.* (quoting *Price*, 53 F.3d at 370). First, Defendants argue that the circular cannot be the source of such a right because it is internal policy, and not a mandatory statute or regulation at all. *Id.* And second, Defendants argue that the cited regulation works against Plaintiff in this instance, insofar as it "allows officers to prevent breaches of the peace

---

[8] Because this document is unpaginated, the Court refers to the ECF page numbers in citing to Defendants' reply brief.

and quell disturbances, such as destruction of another's property"—just as Defendants assert that Officers Rowley and Strange were doing.  *Id.*

Without deciding whether there is in fact a constitutionally protected liberty interest, on the facts presented, the Court cannot conclude that any such interest is clearly established in the manner that the law demands.  Plaintiff seems to suggest that the plain text of the circular and regulation are enough to create "a right to remain on premises without the threat of arrest or eviction by the police . . . [that was] well established and known by reasonable police officers." Pl.'s Opp'n 9.  However, this assertion conflates two distinct issues: whether a policy is known to a party, and whether there are clear foundations in existing precedent that make the right clearly established, *see District of Columbia v. Wesby*, 138 S. Ct. 577, 591–92 (2018), such that it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Jiggetts*, 285 F. Supp. 3d at 171 (quoting *Saucier*, 533 U.S. at 202).  Plaintiff's argument emphasizes the idea that police officers would know about the policy.  *See* Pl.'s Opp'n 9–10.  Yet Mr. Turpin fails to cite any controlling law to substantiate the proposition that the MPD circular and MPD policy clearly establish that police involvement in landlord and tenant disputes amounts to a violation of liberty interests.  The sole case on which Plaintiff relies, *Bridgeforth v. Bronson*, 584 F. Supp. 2d 108 (D.D.C. 2008), involved procedural—not substantive—due process violations, and, in any event, is not binding on this court.  Without more, the Court cannot conclude that the specific right cited here—the alleged substantive liberty interest—was in fact clearly established with the requisite level of specificity for the officers on the scene, even if they knew of the policy.  *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (emphasizing that clearly established right must be dictated by "controlling authority [or by a] . . . robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S.

603, 617 (1999))); *cf. Butera*, 235 F.3d at 646 (emphasizing that the "constitutional right must be identified 'at the appropriate level of specificity' for a court to determine the second prong of the inquiry: whether the right was 'clearly established.'" (quoting *Wilson*, 526 U.S. at 615)).  Thus, the Court dismisses Plaintiff's substantive due process claim on qualified immunity grounds.[9]

### 3.  § 1983 Excessive Force Claim

Additionally, Mr. Turpin alleges that Officers Rowley and Strange used excessive force while arresting him and removing him from his apartment, violating his right to be free from unreasonable seizures pursuant to his Fourth Amendment rights.[10]  Second Am. Compl. ¶¶ 36–43.  Defendants maintain that they are entitled to qualified immunity for any force used because their actions were "'objectively reasonable' in light of the facts and circumstances confronting [them]."  Defs.' MTD 8–9 (citing *Graham*, 490 U.S. at 396).  Defendants argue, more specifically, that "[n]o reasonable officer would have known that they could not remove an individual whom they were told gained entry into another's property unlawfully . . . and refused to leave [when] ordered to do so."  *Id.* at 11.  For the following reasons, the Court disagrees with Defendants' characterization of the alleged facts.

---

[9] Defendants also suggest that Mr. Turpin's Fourth Amendment claims under § 1983 related to his eviction by Officers Rowley and Strange would be subject to claim preclusion.  *See* Defs.' Reply 5.  Although this Court notes that it did dismiss Mr. Turpin's § 1983 claims of illegal entry, false arrest, and malicious prosecution in violation of his Fourth Amendment rights in *Turpin I, see* 319 F. Supp 3d at 207, because these claims are not properly before the Court in the instant case, the Court will not address them.  But the Court notes that its view that the officers would be entitled to qualified immunity on the Fourth Amendment claims previously raised has not changed.

[10] The Court does not address the Fifth or Fourteenth Amendment claims alleged in the complaint because, as discussed above, it finds that this Fifth Amendment claim merges with the Fourth Amendment claim, and Plaintiff has conceded the Fourteenth Amendment component of his claims.

As the Court previously discussed, to determine whether a defendant is entitled to qualified immunity, courts apply a two-pronged analysis to assess "(1) whether the facts alleged show that the government official's conduct violated a 'constitutional right,' and (2) whether that right was clearly established at the time of the incident." *Jiggetts*, 285 F. Supp. 3d at 171 (internal quotation marks and citations omitted). In this case, to ascertain whether Mr. Turpin's Fourth Amendment rights were violated, the Court must determine whether the specific type of force alleged by Mr. Turpin was excessive in a way that represents a "clearly established" violation of his right against unreasonable seizures. *See Turpin I*, 319 F. Supp. 3d at 198 ("[T]the applicability of qualified immunity turns on whether the facts as pleaded establish that [Defendants'] conduct was clearly prohibited under circumstances before them." (citing *Wesby*, 138 S. Ct. at 590; *Saucier v. Katz*, 533 U.S. 194, 202 (2001))). The scope of a qualified immunity inquiry is evaluated "using the same 'objective reasonableness' criteria . . . [used] to scrutinize an officer's actions under the [F]ourth Amendment." *Wardlaw v. Pickett*, 1 F.3d 1297, 1303 (D.C. Cir. 1993).

Determining whether the force used in a particular seizure was "reasonable" "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The application of the reasonableness inquiry under the Fourth Amendment is not based on a "precise definition or mechanical application;" rather, it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat . . ., and whether he is actively resisting arrest . . ." *id.*, as well as whether "the totality of the circumstances justifie[s] a particular sort of . . . seizure," *Garner*, 471 U.S. at 8–9.

The inquiry is "whether the officer's actions are objectively reasonable" and, moreover, the reasonableness of a particular instance involving the use of force is judged from the "perspective of the reasonable officer on the scene, rather than . . . [in] hindsight." *Graham*, 490 U.S. at 396. "Accordingly[,] '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment.'" *Wardlaw*, 1 F.3d at 1303 (quoting *Graham*, 490 U.S. at 396). For an excessive force claim to prevail, "the excessiveness of force [must be] so apparent that no reasonable officer could have believed in the lawfulness of his actions." *Id.*

Here, taking all of Mr. Turpin's factual allegations as true, the Court cannot say that the use of force was reasonable. The case is not, on its face, one that would seem to require force to address an emergency. Rather, it involves a non-violent property crime in which the contested incidents occurred after several days of inaction by the landlord—hardly an exigent threat to human life. *See Garner*, 471 U.S. at 8 (instructing courts to consider "the severity of the crime at issue" in assessing Fourth Amendment reasonableness). Furthermore, although Mr. Turpin was admittedly occupying the residence through forced entry and there had been a writ of restitution entered against him,[11] Second Am. Compl. ¶¶ 16–20, there is no evidence that he was an immediate threat or that he physically resisted arrest in a way that compelled the use of force. The facts alleged, at most, illustrate that Mr. Turpin refused a verbal request to exit the apartment. *Id.* ¶¶ 27–30. Nothing at all, however, establishes that Plaintiff physically resisted arrest; to the contrary, Mr. Turpin alleges that he was compliant with the officers, did not resist being handcuffed, was not armed, and did not attempt to evade arrest by flight. *Id.* As such, the

---

[11] The facts as alleged in the Second Amended Complaint indicate that the Writ of Restitution had expired prior to Mr. Ray changing the locks and before Officer Rowley and Strange's involvement. Second Am. Compl. ¶ 18.

alleged facts are on a par with *Johnson v. District of Columbia*, wherein a plaintiff was kicked repeatedly in the groin, drawing blood—despite being instructed to surrender and laying down flat on the floor—and the Court found that no "reasonable officer" would have taken these actions. 528 F.3d 969, 974 (D.C. Cir. 2008); *see also Arrington v. United States*, 473 F.3d 329, 331-33 (D.C. Cir. 2006) (more force than was reasonable was used when a suspect was punched, beaten, and attacked by a police dog after already being disarmed and handcuffed). Moreover, unlike, say *Oberwetter v. Hilliard*, wherein the degree of force used was found to be reasonable in part because it did not result in serious bodily harm to the suspect, 639 F.3d 545, 555–56 (citing *Wardlaw*, 1 F.3d at 1304 n.7), the alleged facts establish that Mr. Turpin was injured to a degree that he required medical attention after his arrest, Am. Compl. ¶ 34. Taking the facts pleaded in the complaint to be true, Plaintiff was, specifically, "forcibly beat[en] down," "slammed to the hard floor," face first, rubbed on the floor in a way that caused "lacerations and abrasions to his face" and "injuries to his eye and jaw," "kneed" and "pounce[d] on with the [officers'] full weight," and ultimately "dragged" down the stairs and out of the building, in handcuffs, in a "semi-conscious state." *Id.* ¶ 31. Particularly in light of the further factual allegation that Plaintiff is a "frail and elderly senior citizen," *id.* ¶ 20, the Court concludes that "no reasonable officer could have believed in the lawfulness of his actions," *Wardlaw*, 1 F.3d at 1303. Thus, the Court finds that Officers Rowley and Strange cannot properly invoke qualified immunity on the instant facts and denies Defendants' motion to dismiss the excessive force claim.[12]

---

[12] Apart from their appeal to qualified immunity, Defendants do not present any arguments contesting the excessive force claim.

**B. State Law Claims**

Mr. Turpin has also brought D.C. common law claims against Officers Rowley and Strange as well as against the District of Columbia for false arrest, malicious prosecution, trespass, and wrongful eviction.[13] *See generally* Second Am. Compl.  The Court exercises its supplemental jurisdiction over these claims because they are part of the same "case or controversy" as Mr. Turpin's federal law claims.  Defendants argue that this Court should dismiss the claims against Officers Rowley and Strange and the District of Columbia pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  *See* Defs.' MTD 13–20.  For the forthcoming reasons, the Court grants in part and denies in part Defendants' motion.

Because the parties' briefings frequently cite to and rely on D.C. law and regulations, the Court will briefly summarize relevant authorities before analyzing Plaintiff's state law claims.

1. Relevant District of Columbia Authority

*a.  District of Columbia Malicious Destruction of Property Statute*

Defendants initially charged Mr. Turpin with malicious destruction of property in the amount of $1000 or more and resisting arrest, Second Am. Compl. ¶ 33, and Mr. Turpin was eventually charged with resisting arrest and unlawful entry, malicious destruction of property in the amount of more than $1000, and malicious destruction of property in the amount of less than $1000, *see* Superior Ct. Docket, U.S. v. Charles Turpin, Case No. 2016 CMD 021218; *see also* Second Am. Compl. ¶ 35 (discussing outcome of Superior Court claims against Mr. Turpin).[14]

---

[13] In his Second Amended Complaint, Plaintiff alleges wrongful eviction and conversion against Mr. Ray.  As previously discussed, the Court will not address state law claims asserted against Mr. Ray because he has not been served and did not participate in this motion to dismiss.

[14] The Court takes judicial notice of the D.C. Superior Court docket as a public document.  *See Turpin I*, 319 F. Supp. 3d at 203 n.5.  As explained in *Turpin I*, the Court may take judicial notice of such a public document without converting Defendants' motion to dismiss

The District's property destruction statute imposes criminal liability on an individual who "maliciously injures or breaks or destroys, or attempts to injure or break or destroy" private property that is not his own. D.C. Code § 22-303. The value of the property at issue determines the offense level. *Id.* If the property is valued at $1000 or more, then the individual is subject to a fine of up to $25,000 and/or imprisonment of up to 10 years, *id.* (referencing D.C. Code § 22-3571.01), and the offense is considered a felony, *see Enders v. District of Columbia*, 4 A.3d 457, 459 (D.C. 2010) (referring to higher offense level of malicious destruction of property statute as felony). If the property is valued at under $1000, then the individual is subject to a fine of up to $1000 and/or up to 180 days imprisonment, *id.* (referencing D.C. Code § 22-3571.01), and the offense is considered a misdemeanor, *see Enders*, 4 A.3d at 459.

In addition, the District of Columbia's unlawful entry statute imposes criminal liability on, any person who, *inter alia*, enters into any private dwelling or remains on that property "against the will of the lawful occupant" or "refuses to quit" that property "on the demand of the lawful occupant." D.C. Code § 22-3302. Such an act is a misdemeanor and is subject to a fine of up to $1000 and/or up to 180 days imprisonment. *Id.* (referencing D.C. Code § 22-3571.01).

> b. *District of Columbia Regulations Concerning Landlord-Tenant Disputes*

As the Court mentioned in its discussion of Plaintiff's substantive due process claims, Mr. Turpin contends that (1) District of Columbia Municipal Regulation 6A D.C.M.R. §200.11; and (2) Metropolitan Police Department Circular CIR-01-03 prohibited Officers Rowley and Strange from interfering in the dispute between Mr. Turpin and Mr. Ray. The D.C. municipal regulation states, "[m]embers of the [police] force shall not serve civil process; nor shall they

---

into a motion summary judgment. *See Lewis v. Parker*, 67 F.Supp.3d 189, 195 n.6 (D.D.C. 2014) (citing *Covad Commc'ns Co.*, 407 F.3d at 1222).

render assistance in civil cases. They shall, however, prevent breaches of the peace and quell disturbances growing out of those matters and protect United States Marshals in the discharge of their duties." D.C. Mun. Regs. tit. 6–A, § 200.11. The police department circular sets forth key points for police officers to bear in mind when they are addressing evictions. First, it recognizes the illegality of self-help evictions in accordance with the *Mendes* case, which abrogated self-help evictions in the District, and in accordance with later statutory prohibitions. *Landlord Self-Help Evictions*; *see Mendes v. Johnson*, 389 A.2d 781, 787 (D.C. 1978). The circular also acknowledges that landlords engaging in the "common practice" of self-help evictions "often" seek support from a Metropolitan Police Department officer in executing the eviction. *Landlord Self-Help Evictions*. The circular explains that a landlord must file an action in the Landlord and Tenant Court and have a court order (writ of restitution) to engage in eviction. *Id.* Once the court has issued a writ of restitution, the U.S. Marshals may execute the eviction. *Id.* The U.S. Marshals "are the only entity empowered to effect an eviction." *Id.* The circular concludes, "in accordance with [D.C.] laws, officers are instructed that they are not to become involved in apparent landlord-tenant disputes. Rather, when called to the scene, the officers are instructed to maintain the peace and refer the parties to Landlord and Tenant Court. . . ." *Id.*

### 2. Mr. Turpin's State Law Claims

#### a. *False Arrest*[15]

Plaintiff charges that Officers Rowley and Strange unlawfully arrested him without a warrant and without probable cause. Defendants argue that Officers Rowley and Strange had

---

[15] Several courts have indicated that the elements of § 1983 false arrest and D.C. common law false arrest claims are "substantially identical," *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 989 (D.C. Cir. 2014) (quoting *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996)), and "are generally analyzed as though they comprise a single cause of action." *Id.* (citing *Scott*, 101 F.3d at 753–54; *District of Columbia v. Minor*, 740 A.2d 523, 529 (D.C. 1999) (noting that,

probable cause to arrest Plaintiff for unlawful entry or destruction of property. Defs.' MTD 18. Plaintiff counters that the officers did not have probable cause to execute a warrantless arrest, and that there were no exigent circumstances to justify the arrest. Pl.'s Opp'n 17. Mr. Turpin also argues that, because the apartment was fully furnished, and because Officers Rowley and Strange were governed by a regulation and a circular prohibiting them from engaging in civil disputes, Officers Rowley and Strange did not act lawfully by getting involved in the first place and "treating Mr. Turpin like a criminal[,] instead of a tenant," rather than permitting any property damage to be handled as a civil matter between landlord and tenant. *Id.* at 18. For the forthcoming reasons, Plaintiff has the better argument.

Under D.C. law, "[t]he gravamen of a complaint for false arrest or false imprisonment is an unlawful detention. Therefore, '[i]n actions for false arrest and false imprisonment, the central issue is whether the arresting officer was justified in ordering the arrest of the plaintiff[.]'" *Enders*, 4 A.3d at 461 (alterations in original) (first citing *Clarke v. District of Columbia,* 311 A.2d 508, 511 (D.C. 1973) and 32 Am. Jur. 2D *False Imprisonment* § 7 (2007), then quoting *Scott v. District of Columbia,* 493 A.2d 319, 321 (D.C. 1985), then citing 32 Am.

---

if the court finds a viable common law claim of false arrest, then a viable constitutional claim naturally flows, and vice versa)). This Court previously determined that Plaintiff's §1983 false arrest claim could not survive a motion to dismiss. *See Turpin I*, 319 F. Supp. 191. This prior decision does not control because it was made with respect to a different complaint, wherein Plaintiff stated that he informed the officers that he had broken a door to enter the residence, *id.* at 201, such that "a police officer just arriving on the scene would likely have concluded that a crime may have occurred, and thus that the requisite probable cause existed for an arrest," *id.* at 200 (citation omitted). Moreover, the Court dismissed that claim without making a determination regarding the constitutionality of the officer's conduct because there was not any Circuit case law that "clearly answer[ed] the question of probable cause under th[o]se particular circumstances," and, accordingly, it could not conclude that the arrest of Mr. Turpin was a "clearly established constitutional violation." *Id.* at 200–01. The common law claim currently pending not only arises from a different set of alleged facts, but also does not implicate the question of qualified immunity; thus, the following analysis is distinct.

Jur. 2D *False Imprisonment* § 24 (2007)).  Accordingly, a plaintiff cannot make out a valid claim for relief if "the arresting officer[s] w[ere] justified in ordering [his] arrest."  *Id.* (quoting *Scott*, 493 A.2d at 321); *see also District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C. 1993) ("In actions for false arrest[,] . . . the central issue is whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails." (internal citations and quotation marks omitted)), *adhered to on reh'g,* 635 A.2d 929 (D.C. 1993).

What is required to indicate that the arrest was justified depends on whether or not a valid warrant was in place at the time it was effectuated.  *See Murphy*, 631 A.2d at 36 (discussing common law distinction between arrests with and without warrant).  Where, as here, "the plaintiff in a false arrest case shows he was arrested without a warrant, a presumption arises that the arrest was unlawful, and the burden shifts to the government to justify the arrest."  *Enders*, 4 A.3d at 462 (citing *Karriem v. District of Columbia,* 717 A.2d 317, 320 (D.C. 1998); *Clarke*, 311 A.2d at 511).

In the District of Columbia, an officer's authority to arrest an individual without a valid warrant is set forth in D.C. Code § 23-581(a)(1).[16]  This statute provides, *inter alia*, that an officer may make a warrantless arrest of an individual if the officer "has probable cause to believe" that the individual (1) "has committed or is committing a felony;" (2) "has committed or is committing an offense in [the officer's] presence;" or (3) "has committed or is about to commit," among other enumerated offenses, unlawful entry or malicious destruction of property, "and, unless immediately arrested, may not be apprehended, may cause injury to others, or may

---

[16] As the *Enders* court notes, District of Columbia courts "have referred to this statute as 'a codification of the common law of arrest.'"  4 A.3d at 462 n.8 (quoting *Schram v. District of Columbia,* 485 A.2d 623, 624 (D.C.1984)).

tamper with, dispose of, or destroy evidence." *Id.* Thus, under controlling state law, "[l]egal justification to effect a warrantless arrest . . . means either [1] probable cause to believe a felony has been committed or [2] probable cause to believe a misdemeanor has been committed in a manner specified [by statute]." *Enders*, 4 A.3d at 467.

In the alternative to this "probable cause" test, D.C. courts addressing false arrest claims have also applied a less stringent, "partially subjective" test wherein, rather than show that the arrest "was actually supported by probable cause," "the officer must show: (1) that he believed in good faith that his conduct was lawful; and (2) that his belief was reasonable." *Scott v. United States*, 952 F. Supp. 2d 13, 18 (D.D.C. 2013) (quoting *Scales v. D.C.*, 973 A.2d 722, 729 (D.C. 2009)). For this test to apply, a defendant "must affirmatively rely on it; otherwise, the objective 'probable cause' test" described above applies. *Id.* (citing *Karriem v. District of Columbia,* 717 A.2d 317, 320 n.8 (D.C. 1998)). In this case, Defendants invoke this less stringent, partially subjective standard. Defs.' MTD 18 ("In actions for false arrest and false imprisonment, a police officer need not demonstrate probable cause in the constitutional sense, but instead can demonstrate that (1) he or she believed, in good faith, that his [or her] conduct was lawful, and (2) this belief was reasonable." (internal quotation marks and citations omitted)).

Here, applying the partially subjective standard to the facts as alleged in the second amended complaint, Defendants have not demonstrated that they reasonably believed, in good faith, that they could lawfully arrest Mr. Turpin for either unlawful entry or malicious destruction of property. The Court will begin with the parties' contentions concerning unlawful entry and then consider malicious destruction of property.

Determining whether Defendants' conduct was lawful pursuant to the partially subjective standard requires putting it in context. As the Court has noted, Mr. Ray asked officers to respond

to Plaintiff's reentry into the apartment, and the second set of responding officers then arrested Plaintiff for property damage. Second Am. Compl. ¶¶ 26, 27, 33, 35. Plaintiff specifically alleges that "Ray came back to the apartment with two . . . police officers" who "indicated to Mr. Turpin that he had been evicted and would have to leave." Second Am. Compl. ¶¶ 26–27. Despite ambiguity in the pleading as to whether Mr. Ray informed Officers Rowley and Strange either that Plaintiff was unlawfully on the property or that Mr. Ray had changed the locks and Plaintiff had reentered the apartment, Plaintiff's factual allegations indicate that the officers believed that Mr. Turpin was not authorized to be on the premises when they arrived. *Id.*

Although this state of affairs might seem to favor Defendants, when placed in context, this inference does not give rise to the conclusion that the officers necessarily acted reasonably. When the officers arrived, Mr. Turpin willingly answered the door and spoke with Officers Rowley and Strange, denying that he had done anything wrong.[17] Second Am. Compl. ¶ 29(b). He did not attempt to run away or hide or otherwise display actions suggestive of a guilty conscience. *Cf. Wesby*, 138 S. Ct. at 587 (finding that officers had reason to believe that plaintiffs were unlawfully on a property due, in part, to the fact that many partygoers scattered and two hid upon seeing uniformed officers). Mr. Turpin explained to Officers Rowley and Strange that Mr. Ray "effect[ed] an illegal self-help eviction" because Mr. Ray locked him out after the writ of restitution expired and without the authority of the U.S. Marshals. Second Am. Compl. ¶¶ 19, 29. Mr. Turpin specifically indicated that the writ of restitution against him had

---

[17] Plaintiff alleges that he told officers "that he did not believe that he had not done anything wrong." Second Am. Compl. ¶ 29(b). While the technical understanding of the double negative in this sentence would suggest that Plaintiff believed he was culpable for some wrong, the Court believes this to be a drafting error. Interpreting the facts in the light most favorable to Plaintiff, the Court will proceed as it believes that the allegation was intended to read: "that he did not believe that he had done anything wrong."

expired before the lockout.  *Id*.  Within this context, a reasonable officer in good faith would

have been placed on alert that there was a dispute regarding whether an eviction had occurred

and whether Mr. Turpin had a right to be within the apartment.  Although Officers Rowley and

Strange were not required to accept the merits of Plaintiff's explanation or endorse his claims of

innocence, *see Jenkins v. District of Columbia*, No. 16-cv-841, 2020 WL 488652, at * 7 (D.C.

Jan. 30, 2020), his explanation would have indicated that their involvement was, potentially,

prohibited by D.C. Municipal Regulations,[18] *see* D.C. Mun. Regs. tit. 6–A, § 200.11 (prohibiting

police involvement in civil matters); *see also Weishapl v. Sowers*, 771 A.2d 1014, 1022 (D.C.

2001) (holding officers did not falsely arrest plaintiff where officers declined to formally arrest

him and referred the disputants to court because plaintiff and former business partner both

claimed rights to property).

     In short, on the facts alleged, it is plausible that the officers knew that interference in a

civil landlord-tenant matter was prohibited not merely because of the existence of the municipal

regulation, but also because the Metropolitan Police Department itself issued a circular

indicating that "in accordance with the . . . law[], officers are instructed that they are not to

become involved in apparent landlord-tenant disputes.  *Landlord Self-Help Evictions*.  Further

---

[18] As discussed previously, a Metropolitan Police Department circular also prohibits interference with landlord-tenant disputes.  *See Landlord Self-Help Evictions*.  "Agency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation.  Rather they provide officials with guidance on how they should perform those duties which are mandated by statute or regulation."  *Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C. 1990); *see Scott*, 101 F.3d at 758 n.7 (quoting *Abney v. District of Columbia*, 580 A.2d 1036, 1041 (D.C. 1990)) (noting that Metropolitan Police Department general orders issued pursuant to a regulation "'essentially serve [] the purpose of an internal operating manual,' and lack the force or effect of a statute or regulation.").  Therefore, the Court's discussion of regulations that plausibly made Mr. Turpin's arrest unlawful is limited to the municipal regulation.  The circular is discussed insofar as it suggests that Defendants knew or should have known that their actions were prohibited.

bolstering this conclusion are the events just before Officers Rowley and Strange arrived. Plaintiff alleges that Mr. Ray had called two other officers to the apartment prior to calling Officers Rowley and Strange. Presumably, drawing inferences in favor of Plaintiff, Mr. Ray and Mr. Turpin made similar statements to those initial officers as they did to Officers Rowley and Strange. Yet, these two officers did not intervene, "realizing that this was a 'civil matter' and not a 'criminal matter.'" Second Am. Compl. ¶23.[19] Thus, the facts as alleged plausibly establish that any reasonable officer in good faith would have known to avoid engagement in such a dispute once it became apparent, and do not support Mr. Turpin's arrest for unlawful entry.

Nor does Defendants' contention that they reasonably believed they could arrest Plaintiff for malicious destruction of property compel a different conclusion. The question for the Court is whether the officers had a reasonable belief that probable cause existed in arresting Plaintiff for malicious destruction of property in the manner that Defendants assert. *See* Def.'s Mot. 18–19. Defendants assert that Mr. Turpin's discussion with Officers Rowley and Strange put them on alert that he had resorted to self-help to re-enter the building after being locked out by Mr. Ray. *See* Second Am. Compl. ¶¶ 19, 20. However, there are no further factual allegations in the pleading that support an arrest for malicious destruction of property. Plaintiff indicates that he made a "peaceful, uneventful" reentry through the rear bedroom window after the locks had been changed, *id.* ¶¶ 20-21, and that Mr. Ray did not witness this event, *id.* ¶ 21. Defendants do not speak to why, on the facts as alleged in the second amended complaint, the bare fact that Mr.

---

[19] While the actions of two other officers does not necessarily speak to the subjective perspective of Officers Rowley and Strange, it does speak to the "reasonable" part of the "partially subjective" test. On what were likely to have been similar, if not identical, facts, two other officers determined that they were required to avoid involvement in the dispute, making it more plausible that Officers Rowley and Strange's belief that arresting Mr. Turpin was lawful was not reasonable.

Turpin exercised self-help measures to enter through a window supports a malicious destruction of property claim.  Instead, Defendants simply assert, "Plaintiff alleges that he gained entry via a rear window, and he further alleges that the locks had been changed, preventing him from entering normally.  Under these facts, dismissal of this claim is appropriate."  Defs.' MTD (citing Second Am. Compl. ¶ 20).  Under the controlling statute, though, it is not obvious to the Court why peacefully entering through a rear window in the fashion alleged reasonably supports either (1) probable cause to believe that a felony had been committed because there was over $1000 of property damage or (2) probable cause to believe that, unless Mr. Turpin was immediately arrested, he might cause injury to others or destroy evidence.[20]  *See* D.C. Code § 23-581(a)(1) (setting forth bases for warrantless arrest of individual).  Thus, Defendants' argument on this point is unavailing.[21]  Without more than such conclusory assertions, the Court cannot say that Defendants have carried their burden to establish the lawfulness of their warrantless arrest.[22]  *See Enders*, 4 A.3d at 462 (citing *Karriem,* 717 A.2d at 320; *Clarke*, 311 A.2d at 511).

---

[20] Because the entry occurred before the officers arrived, the Court does not consider the third basis for a warrantless arrest (commission of an offense in the officer's presence).  *See* D.C. Code § 23-581(a)(1).

[21] To be sure, Defendants' reply brief shifts back to the contention that "Plaintiff acknowledges that he told the officers that he had kicked in the door of the apartment to gain entry, which supports probable cause for the arrest," Defs.' Reply 8 (citing Verified Compl. ¶ 22), but the Court credits only the facts in the amended complaint and so expresses no opinion on this point.  It bears underscoring that, if any of the facts in the operative complaint are unsupported, Plaintiff and his counsel may be subject to Rule 11 sanctions.

[22] Neither party is terribly specific in its argumentation or discusses the controlling statute in detail, but the Court notes that it seems unlikely that Defendants could reasonably believe that peaceful entry through a window would cause $1000 of damage, as is required to sustain a felony malicious destruction of property charge.  Nor do any of the factual allegations plausibly indicate that Mr. Turpin might have, unless arrested, harmed others or destroyed property.

Accordingly, taking the facts in Plaintiff's amended complaint to be true, Defendants have not established that they reasonably and in good faith believed that they were lawfully arresting Plaintiff, and their motion to dismiss Mr. Turpin's false arrest claim is denied.

### b. Malicious Prosecution

Mr. Turpin also brings a claim of malicious prosecution, alleging that "Defendants caused [P]laintiff to be improperly subjected to judicial proceedings for which there was no probable cause." Second Am. Compl. ¶ 86. Defendants assert that Plaintiff's claim fails because he cannot establish multiple elements of the cause of action. First, Defendants contend that Plaintiff's factual allegations, contrary to what Mr. Turpin argues, support probable cause for unlawful entry and destruction of property. Defs.' MTD 19–20. Second, Defendants assert that Plaintiff has not pleaded facts suggesting malice or showing that he sustained a special injury. *Id.* For the following reasons, Plaintiff has the better argument at this stage of litigation.[23]

"[T]o prevail in a claim of malicious prosecution, [a] plaintiff must plead and prove four elements: (1) the underlying suit terminated in plaintiff's favor; (2) malice on the part of defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980) (citing *Ammerman v. Newman*, D.C. App., 384 A.2d 637 (1978)). The underlying suit

---

[23] Although the Court granted Defendants' motion to dismiss a §1983 malicious prosecution claim that was included in an earlier version of Plaintiff's complaint, *see Turpin I*, 319 F. Supp. 3d at 201–03, that earlier, constitutional claim was (1) predicated on a different complaint and (2) does not resolve the common law claim, which is governed by a distinct standard, *see Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 43 (D.D.C. 2015) (a Fourth Amendment malicious-prosecution claim under Section 1983 . . . proceeds under a different standard"); *see also Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 249 n. 4 (D.D.C. 2018) (citing *District of Columbia v. Tulin*, 994 A.2d 788, 802 (D.C. 2010) and *Bumphus v. Smith*, 189 A.2d 130, 131 (D.C. 1963) ("D.C. tort law does not require a 'seizure' to make out a malicious prosecution claim based on a prior criminal prosecution.")).

must have been instituted or continued by the defendant against the plaintiff.  *Amobi*, 755 F.3d at 992 (quoting *DeWitt v. District of Columbia*, 43 A.3d 291, 296 (D.C. 2012)).  The parties either do not address or do not contest instigation of the suit or termination, instead focusing their dispute on the other elements of the claim.[24]  For the reasons set forth below, Plaintiff has plausibly established a claim for relief.  The Court will consider the parties' arguments concerning lack of probable cause before addressing malice and special injury.

### i.  Lack of Probable Cause[25]

Reiterating many of the same arguments raised in the false arrest context, the parties dispute whether Plaintiff's factual allegations are consistent with a finding of probable cause. Defendants believe that the answer is yes, arguing once more that Mr. Turpin's factual allegations that he "exercised self-help to gain re-entry into the apartment" support probable cause for unlawful entry and malicious destruction of property, making Officers Rowley and

---

[24] Because the parties do not contest these points, no further discussion is required.  The Court nonetheless notes that these elements appear to be easily met on the facts presented.  First, "instigation" occurs "when institution [of a criminal, civil, or administrative proceeding] actually follows from" an initial act.  *Melvin v. Pence*, 130 F.2d 423, 427 (D.C. Cir. 1942) (finding defendants instigated administrative proceedings against plaintiff where defendants reported that plaintiff had impersonated an officer to the licensing body for the purposes of having plaintiff's license revoked).  Here, Officers Rowley and Strange instigated the criminal proceedings against Plaintiff by arresting and criminally charging him.  Second Am. Compl. ¶ 33.  Moreover, Defendants do not dispute that the prosecution terminated in Mr. Turpin's favor when he was found not guilty of all charges.  *See id.* ¶ 35; Defs.' Reply 10.

[25] This analysis is distinct from the Court's prior discussion of probable cause in the false arrest context, for two reasons.  First, the "partially subjective" test that controls with respect to the false arrest claim sets a lower bar than the probable cause standard that controls with respect to this claim.  *See Scott*, 952 F. Supp. 2d at 18.  Moreover, the issues are distinct with respect to the two claims because "[t]he issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the underlying suit" for which the plaintiff was prosecuted.  *Amobi*, 755 F.3d at 992 (quoting *Pitt v. District of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007)); *see also Clark v. District of Columbia*, 241 F. Supp. 3d 24, 33 (D.D.C. 2017) (stating that one element of a malicious prosecution claim is the "absence of probable cause for the proceeding").  Thus, even though the Court reaches similar conclusions, the present inquiry is independent of the earlier analysis.

Strange reasonable in arresting Mr. Turpin and thereby instigating proceedings against him. Defs.' MTD 19–20 (citing Second Am. Compl. ¶¶ 19, 20). Mr. Turpin sees matters differently, contending that his factual allegations indicate a lack of basis for probable cause. Pl.'s Opp'n 19. More specifically, Mr. Turpin asserts that Defendants lacked probable cause to arrest Plaintiff because they ignored controlling regulations proscribing the officers' involvement in landlord-tenant disputes despite his explanations of the situation. *Id.* at 18. Plaintiff also emphasizes that, because the writ of restitution had expired at the time the officers arrived at the property, he "had a reasonable basis to expect that his possession and occupancy of the premises, for however long, was secure." *Id*. at 17. For the following reasons, as in the false arrest context, the Court finds Defendants' arguments unpersuasive.

"In a civil action for malicious prosecution, probable cause is defined as the existence of 'facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper.'" *Pitt*, 491 F.3d at 501–02 (quoting *Ammerman*, 384 A.2d at 639–40)). Whether there is probable cause does not depend on "the actual state of the case in point of fact;" rather, it "depends on 'the honest belief of the person instituting [the prosecution of a suit] and may flow from a belief that turns out to be unfounded as long as it is not unreasonable.'" *Moore v. Hartman*, 102 F. Supp. 3d 35, 115 (D.D.C. 2015) (quoting *Lyles v. Micenko,* 404 F. Supp. 2d 182, 189 (D.D.C. 2005)). "[L]ack of probable cause is an essential element[,] . . . and a showing of probable cause is thus a valid defense which warrants a directed verdict for the defendants." *Id*. at 114–15 (second alteration in original) (citing *Ammerman*, 384 A.2d at 639).

Here, because Defendants' involvement in Mr. Turpin's prosecution stems from their instigation of criminal charges due to his arrest, whether there was probable cause to prosecute is

related to whether there was probable cause to arrest. Although, as the Court just addressed, these are distinct standards, the same factual allegations can support probable cause in both claims. *See Prieto v. May Dep't Stores Co..,* 216 A.2d 577, 578 (D.C. 1966) ("There is no material distinction between reasonable grounds for detention in false imprisonment and probable cause in malicious prosecution."); *cf. DeWitt*, 43 A.3d at 295–96 ("The existence of probable cause [in a false imprisonment claim] will likewise defeat a claim for malicious prosecution." (quoting *Gabrou v. May Dep't Stores Co.,* 462 A.2d 1102, 1104 (D.C. 1983)).

As in the false arrest context, based on the facts as alleged in the second amended complaint, the Court finds that the pleading plausibly establishes a lack of probable cause. For one, there are no factual allegations indicating that Plaintiff, an elderly, frail man, resisted arrest, as the Court addressed in its prior discussion of Mr. Turpin's excessive force claim. *See* Second Am. Compl. ¶ 33 (stating that Plaintiff was initially charged with resisting arrest and felony destruction of property). In addition, Mr. Turpin indicates that he willingly spoke with the officers and explained the circumstances of the civil dispute, including the fact that the U.S. Marshals had not yet executed the eviction and the writ of restitution had expired. *Id*. ¶¶ 18–19. Based on these factual allegations, it was not reasonable to rely exclusively on Mr. Ray's representations that Mr. Turpin was a "squatter" who had unlawfully entered. To the contrary, the officers should have been alerted to a dispute regarding whether an eviction had occurred and whether Mr. Turpin had a right to remain within the apartment, making this a civil landlord-tenant matter in which Defendants' involvement was, potentially, prohibited by D.C. Municipal Regulations. *See* D.C. Mun. Regs. tit. 6–A, § 200.11 (prohibiting police involvement in civil matters); *see also Weishapl*, 771 A.2d at 1022. Accordingly, on the facts as alleged, it is

plausible that Defendants lacked probable cause to arrest Plaintiff and thereby instigate his prosecution based on the offenses of resisting arrest or unlawful entry.[26]

Moreover, the bare fact that Officers Rowley and Strange knew that Mr. Turpin had exercised self-help to enter the apartment does not indicate probable cause for the *felony* malicious destruction of property charge. *See Amobi*, 755 F.3d at 992 (emphasizing that "[t]he issue in a malicious prosecution case is . . . whether there was probable cause for the underlying suit" for which the plaintiff was prosecuted"). Again, Mr. Turpin alleges that his reentry through the window was "peaceful" and "uneventful." Second Am. Compl. ¶¶ 20–21. Particularly under the higher, objective probable cause standard that applies in the malicious prosecution context, the Court cannot say, as a matter of law, that these facts and circumstances indicate probable cause to believe that Plaintiff had committed felony destruction of property. Even though the arresting officer does not have "the duty of a . . . positive and direct ascertainment of the exact amount of the money' in determining whether probable cause exists," *Enders*, 4 A.3d at 471 (quoting *Maghan v. Jerome*, 88 F.2d 1001, 1002 (D.C. 1937)), this is not a "border-line case" where it is reasonable to believe that the nature of entry, as Plaintiff characterizes it, might have led to property damage of around $1000. Thus, taking the facts in the amended pleading to be

---

[26] Although the parties spar over whether Mr. Turpin was unlawfully evicted (as Plaintiff contends) or arrested for a crime (as Defendants contend), their filings are silent as to how, if at all, the D.C. regulation's ban on MPD officer involvement in eviction proceedings affects any subsequent prosecution of a charge stemming from events that occurred when the officers arrived on the scene of a landlord-tenant dispute. For instance, assuming *arguendo* that an officer is barred from making an arrest in the context of what is self-evidently a civil eviction dispute, would the regulation permit the officer to transmit information about events on the scene to a U.S. attorney's office for a prosecutor, who then saw fit to submit the information to a grand jury? To the extent that such considerations or other specific arguments concerning the line between the regulation's bar on MPD officers' "serv[ice of] civil process" or "render[ing] assistance in civil cases" and its permission to "prevent breaches of the peace and quell disturbances growing out of those matters," D.C. Mun. Regs. tit. 6–A, § 200.11, inform the parties' stances, the Court invites briefing on this question in subsequent stages of litigation.

true, the Court cannot credit Defendants' contentions that "probable cause existed for the arrest" because "Plaintiff was arrested for a crime [that] he admitted." Defs.' Reply 10. Accordingly, Mr. Turpin has plausibly established lack of probable cause.[27]

### ii. Malice

The parties also dispute whether Mr. Turpin's factual allegations suffice to plausibly establish a second element of this claim: malice. Defendants assert that Mr. Turpin pleaded no specific facts showing that Defendants had malice towards him or that his rights were disregarded. Defs.' MTD 20; Defs.' Reply 10. Plaintiff emphasizes that he need not prove "actual malice" to make out this claim for relief, arguing that he has offered "enough evidence upon which a factfinder could find that [Defendants'] treatment of Mr. Turpin was malicious[.]" Pl.'s Opp'n 19. For the forthcoming reasons, Mr. Turpin has the better argument.

"It is generally held that the requisite malice is that dependent on the existence of an improper motive (as distinguished from malice in the technical legal sense), and has also been described as the existence of an evil purpose or motive, a wicked or mischievous intent, or a willful [sic], wanton, reckless or oppressive disregard to the rights of the plaintiff." *Ammerman*, 384 A.2d at 640–41. "The determination of malice is exclusively for the factfinder." *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 255 (D.D.C. 2018) (quoting *Pitt*, 491 F.3d at 504) (internal quotations omitted)).

---

[27] The Court notes, moreover, that if there is any factual dispute concerning probable cause, this is a question for the finder of fact at a later stage of litigation. *See Smith v. Tucker*, 304 A.2d 303, 306 (D.C. 1973) (discussing probable cause as mixed question of law and fact, while noting that, "[w]here the facts are not in dispute[,] the question of probable cause is one of law for determination by the court"). It would not be appropriate for the Court to resolve any such factual dispute by construing the factual allegations in Defendants' favor at the motion to dismiss stage. *See W. Org. of Res. Councils*, 892 F.3d at 1240.

Malice does not necessarily need to be shown directly. "A reasonable factfinder c[an] infer the existence of malice from the officers' alleged disregard for the explanations offered by [Plaintiff] at the scene and their alleged mistreatment of [Plaintiff] during and after his arrest." *Creecy v. District of Columbia*, No. 10–841, 2011 WL 1195780 at *7 (D.D.C. 2011). For instance, the *Creecy* court concluded that a reasonable factfinder could find malice where the plaintiff had explained to the officers that he had not done anything wrong and did not resist arrest, yet the officers threw him against the wall, dislocated his shoulder, and tightened his handcuffs so tightly that he lost circulation. *Id.* In short, the jury may infer malice from the facts. *See Sherrod*, 334 F. Supp. 3d at 255. In addition, malice may be presumed from lack of probable cause. *Amobi*, 755 F.3d at 993 ("[I]t is axiomatic that malice may be presumed from the lack of probable cause"); *see also Moore*, 102 F. Supp. 3d at 121 (citing *Chapman v. Anderson*, 3 F.2d 336, 339 (D.C. Cir. 1925)); *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 150 (D.D.C. 2005)).

Here, there are at least two ways that a reasonable factfinder could interpret the alleged facts to plausibly determine that the element of malice has been established. First, as the Court previously discussed, Mr. Turpin has pleaded facts that support his §1983 excessive force claim. Plaintiff alleges that Officers Rowley and Strange arrested him in a "particularly brutal and callous manner" and "used unnecessary force against Mr. Turpin who was already subdued." Second Am. Compl. ¶ 31. Plaintiff further states that the officers "forcibly beat," "brutally slammed," "unnecessarily pounce[d]" on, and "brutally dragged" Mr. Turpin during his arrest. *Id.* Mr. Turpin indicates that these actions caused him pain, eye and jaw injuries, lacerations, and abrasions. *Id.* These factual allegations, which indicate that Defendants beat and slammed Mr. Turpin, an elderly man, *id.*, could plausibly establish that Officers Rowley and Strange had

"an oppressive disregard to the rights of the plaintiff," *Ammerman*, 384 A.2d at 640–41. Such a conclusion could support a finding of malice.

Moreover, even if application of potentially excessive force did not support the element of malice, the factual allegations concerning this element of malicious prosecution do not merit dismissal of the claim for another reason. As explained above, Plaintiff has alleged facts that plausibly indicate that Defendants lacked probable cause in arresting Plaintiff.[28] Mr. Turpin states that he was charged with destroying property valued at $1,000 or more and resisting arrest. Second Am. Compl. ¶ 33. But the facts as Plaintiff has alleged them, taken to be true, do not support either of those initial charges. *See id.* ¶¶ 20-21 ("Mr. Turpin, believing that he had a right to enter the subject premises, did so after [*sic*] by gaining entry through the rear bedroom window of the apartment. The re-entry of Mr. Turpin into his apartment was peaceful, uneventful and was not witnessed by defendant Ray."). And once more, the second amended complaint contains no suggestion that Plaintiff resisted arrest. A mere verbal refusal to leave the apartment, without any physical resistance or attempt to flee, does not indicate that Plaintiff was anything more than compliant with the officers. *Id.* ¶¶ 27–30. Because these factual allegations are consistent with the conclusion that Defendants lacked probable cause, they provide further support that Plaintiff has plausibly established malice.

---

[28] The Court reserves judgment concerning whether probable cause existed. This determination is not necessary in order to conclude that, as previously discussed, Plaintiff has plausibly alleged lack of probable cause or to find that, as the Court just addressed, Plaintiff has plausibly alleged the element of malice. The following discussion of lack of probable cause reinforces the Court's conclusions that the malice element does not support dismissal of Mr. Turpin's claim at this stage of litigation.

iii. Special Injury

Defendants' arguments concerning the final disputed element of the claim, special injury, fare no better. Although Defendants assert that Plaintiff's failed to plead "facts showing that he sustained a special injury," Def.'s MTD 20, this contention overlooks the uncontested factual allegation that Plaintiff was arrested, Second Am. Comp. ¶¶ 31–33. Under D.C. law, arrest is a "special injury" in a malicious prosecution claim. *Joeckel v. Disabled American Veterans*, 793 A.2d 1279, 1282 (D.C. 2002); *see Ammerman*, 384 A.2d at 641 ("[I]n order for a plaintiff to prevail in an action for malicious prosecution in a civil suit, there must be an arrest of the person or seizure of the property of the plaintiff, or other special injury sustained."). Thus, Mr. Turpin has satisfied the special injury requirement.

Accordingly, because the pleading plausibly alleges facts that support each of the challenged elements of this cause of action, Mr. Turpin has made out a viable claim for relief.

*c. Trespass*

Mr. Turpin also brings a claim for trespass based on the factual allegation that Officers Rowley and Strange unlawfully entered his apartment in the process of arresting him. Second Am. Compl. ¶ 78. Defendants make two primary arguments in support of their motion to dismiss this claim. First, underscoring Mr. Turpin's "unlawful" "entry into the property owner's property," Defendants maintain that Plaintiff has not "plead[ed] facts showing that Officers Rowley and Strange invaded or disrupted his *exclusive* possession of the property." Defs.' MTD 15 (emphasis in original) (citing Second Am. Compl.). Second, Defendants emphasize Plaintiff's failure to allege any facts indicating that the officers intended to trespass on his property. *Id.* In support of this point, Defendants contend that Plaintiff lacked a reasonable expectation of privacy at the time that the officers entered the property, asserting that it was

reasonable for the officers to enter the premises to arrest him based on their "probable cause to believe Plaintiff had illegally destroyed the property to gain entry." *Id*. at 15–16; *see also* Def.'s Reply 7 (discussing Mr. Turpin's lack of reasonable expectation of privacy in the premises). Plaintiff responds by arguing that the expiration of the writ of restitution, and the failure to evict him before the deadline passed, gave him a "reasonable basis to expect that his possession and occupancy of the premises . . . was secure." Pl.'s Opp'n 15. He further argues that he was not a "squatter" in the manner that Defendants charge, *id*., and that officers had no legal basis to enter his apartment when they "had reason to believe that the dispute was between a landlord and a tenant,"[29] *id*. at 16. Although neither side's argument is very persuasive because both parties rely primarily on constitutional law standards that do not directly address the elements of the common law cause of action, for the reasons set forth below, the Court finds that Mr. Turpin has not made out a plausible claim for relief.[30]

In the District of Columbia, the tort of trespass consists of "the intentional intrusion of a person or thing upon property that invades and disrupts the owner's exclusive possession of that property." *Robinson v. Farley*, 264 F. Supp. 3d 154, 163 (D.D.C. 2017) (quoting *Garay v. Liriano*, 943 F. Supp. 2d 1, 25 (D.D.C. 2013); *see also Morgan v. Barry*, 12 Fed. App'x. 1, 3 (D.C. Cir. 2000). Trespass has three elements: "(i) an unauthorized entry (ii) onto the plaintiff's

---

[29] Both parties use the term "squatter;" however, this word is of no legal significance and the Court uses it here only because the parties do.

[30] Defendants' briefs in particular draw heavily from the Court's discussion in *Turpin I*, which considered whether Plaintiff had a reasonable expectation of privacy at the time the officers entered. 319 F. Supp. 199 (concluding that there was not a clearly established reasonable expectation of privacy based on the facts as alleged, and ruling on qualified immunity grounds). Because this analysis (1) applied to a prior version of the complaint and (2) occurred in the context of a § 1983 illegal entry claim that specifically assessed Fourth Amendment protections, the points that this Court made concerning the potential lack of a reasonable expectation of privacy do not speak directly to the resolution of the common law claim except insofar as the same underlying facts are germane to both causes of action.

property (iii) that interferes with the plaintiff's possessory interest." *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 118 (D.D.C. 2018) (quoting *Council on American–Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 344 (D.D.C. 2011)); *see also Sarete, Inc. v. 1344 U. Street Ltd. P'ship*, 871 A.2d 480, 490 (D.C. 2005). In general, "[a] 'possessory interest' is defined as '[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner.'" *Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1060 (D.C. 2014) (quoting Black's Law Dictionary 1203 (8th ed. 2004)) (citing *Fortune v. United States*, 570 A.2d 809, 811 (D.C. 1990)). Mere permission to occupy or use property does not create a possessory interest; the operative question is an individual's ability to control and exclude others from using the property. *Id.*

In this case, given Mr. Turpin's statement that Officers Ray and Strange entered the apartment to "accost[] him," Second Am. Compl. ¶ 30, the Court must determine whether that entry was unauthorized and whether Plaintiff had the requisite possessory interests to give rise to a common law trespass claim. The Court begins with the question of Mr. Turpin's possessory interest, which the parties vigorously dispute, and which is central to Plaintiff's claim for relief. As set forth below, because a judgment of possession had been entered in favor of Mr. Ray at the time the officers entered the apartment, Mr. Turpin cannot establish the requisite possessory interest (exclusive possession) to bring a trespass claim.

At the outset, the Court must contend with the fact that the precise nature of Plaintiff's possessory interest in the property is not crystal clear on the face of the pleading. On the one hand, it appears that Mr. Turpin's name was not included on any formal lease agreement with Mr. Ray. Second Am. Compl. ¶¶ 9–11 (indicating that Plaintiff's long-term companion was listed on the lease); Defs.' MTD 15. On the other hand, Mr. Turpin alleges that he had resided

on the property for ten years and had paid rent for the eight most recent years without any objection from Mr. Ray. Second Am. Compl. ¶¶ 9–11. Mr. Ray did not object to Plaintiff's occupancy until Mr. Ray decided to sell the apartment, which occurred nearly four months after the passing of Mr. Turpin's long-term companion, Ms. Miles, *id*. ¶¶ 12–15, making it plausible that some sort of tenancy arrangement existed during that time. *Accord Gregorio*, 238 F. Supp. 3d at 54 (discussing "special arrangement" that "sound[ed] very much like a landlord-tenant relationship" where defendant owned property, but plaintiff paid promissory note on property); *Young*, 752 A.2d at143 ("[I]f [the plaintiff] . . . had an oral agreement to occupy the apartment in exchange for regular monthly rental payments as [a] subtenant, a tenancy at sufferance would arise[.]"). It is based on these alleged facts that Plaintiff argues that he had "possessory interests" with which Officers Rowley and Strange interfered, "no matter how extensive said interests were." Pl.'s Opp'n 16.

But even assuming *arguendo* that Plaintiff had some sort of possessory interest in the property, Defendants are correct in contending that Mr. Turpin has not alleged facts to plausibly demonstrate the *exclusive* possession that is required to make out a trespass claim in the District of Columbia. *See* Defs.' MTD 15. Under the established law of this jurisdiction, once a judgment of possession has been entered, only the party in whose favor it is entered may lawfully be in possession of the property. *Hill v. G.E. Capital Mortg. Servs., Inc.*, 859 A.2d 1055, 1057 (D.C. 2004) (rejecting former tenant's claim that he was entitled to remain on property after entry of judgment of possession against him, but before eviction by U.S. Marshals); *see Brown v. Hornstein*, 669 A.2d 139, 142 (D.C. 1996) (stating that, upon a successful suit for possession by a landlord, a tenant is "required to surrender possession forthwith"). In this case, Plaintiff's pleading indicates that a writ of restitution had been

approved by a landlord and tenant court on October 13, 2016.  Second Am. Compl. ¶ 16.

Although Mr. Turpin's second amended complaint does not state outright that a judgment of

possession was entered against him, the public record of the landlord-tenant suit referenced in

the pleading, *see id*. ¶¶ 15–16, indicates that a judgment of possession against Plaintiff was

entered on August 25, 2016, *see Landlord and Tenant Branch Docket, Ray, Darnell v. Squatter L*

*& TC*, Case No. 2016 LTB 017208.  Upon the entry of this judgment, Plaintiff no longer had

exclusive possession.  *See Hill*, 859 A.2d at 1057; *Brown*, 669 A.2d at 142.  Because Mr. Turpin

has pleaded no facts indicating that he subsequently regained such possession, he cannot make

out a plausible claim for trespass.

Moreover, Plaintiff's arguments concerning the officers' involvement after the expiration

of the writ of restitution, *see* Pl.'s Opp'n 15–16, do not alter the impact of this central omission.

Relying on *Bridgeforth v. Bronson*, Mr. Turpin asserts that Defendants' conclusions that he was

a "squatter" and actions to remove him improperly "assum[ed] the role of the court and thereby

defeat[ed] the purpose of the eviction laws."  Pl.'s Opp'n 16 (quoting 584 F. Supp. 2d at 115).

This argument is unpersuasive on its face because the *Bridgeforth* court made this point in the

context of rejecting the officers' qualified immunity argument, which has no bearing on the

pending common law claim.  But even if it were relevant here as a matter of law, the instant case

is distinct on the facts because the trespass claim turns on the question of *possession* after entry

of a judgment of possession, and not the distinct question of whether Defendants' actions in

removing Plaintiff from the property amounted to an unlawful *eviction*.[31]  In this context, given

Mr. Turpin's failure to establish his exclusive possession of the property and his own pleading's

inclusion of facts plausibly indicating that Mr. Ray in fact had possession at the time that

---

[31] The Court considers this distinct claim *infra* Section IV.B.2.d.

Plaintiff was removed from the premises, his trespass claim does not pass muster. Accordingly, for the reasons stated previously, the Court grants Defendants' motion to dismiss this claim.[32]

### d. Wrongful Eviction

Mr. Turpin's remaining state law claim is for wrongful eviction. Second Am. Compl. ¶¶ 59–69. Plaintiff argues that Mr. Ray illegally locked Plaintiff out of the apartment and that Defendants Rowley and Strange aided Mr. Ray in effecting a wrongful eviction. Pl.'s Opp'n 14–15. On Mr. Turpin's account, Mr. Ray "sought the assistance of the Metropolitan police to aid in his eviction of the plaintiff from the premises." Second Am. Compl. ¶ 62. Plaintiff also maintains that Defendants were aware or should have been aware that, because no lawful eviction had taken place, they lacked authority to interfere in a landlord and tenant dispute. *Id.* ¶¶ 67–68. Defendants counter that Plaintiff was arrested for destruction of property and was, accordingly, not wrongfully evicted. Defs.' MTD 14. Defendants emphasize Mr. Turpin's own admission that he resorted to self-help to enter the apartment after Mr. Ray changed the locks and, therefore, maintain that Plaintiff was arrested for destruction of property and unlawful entry and was criminally prosecuted—not wrongfully evicted. Defs.' Reply 6–7. For the following reasons, Defendants' arguments are unavailing.

In the District of Columbia, to establish wrongful eviction, a tenant must prove that the defendant "performed some act of a permanent character with the intention and effect of depriving the tenant of the enjoyment of the demised premises or a part thereof." *Gregorio*, 238 F. Supp. 3d at 54 (quoting *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 101 (D.C. 2007)). Self-help evictions are prohibited. *Id.* (quoting *Hinton*, 917 A.2d at 102). Thus, a landlord

---

[32] Because, as described above, Plaintiff has not pleaded any facts supporting the requisite possessory interest, the Court need not address the parties' arguments concerning Defendants' intent or whether the entry to the apartment was otherwise unlawful.

cannot evict a plaintiff without proper "court process." *Young*, 752 A.2d 138, 142 (D.C. 2000);

*see Mendes*, 389 A.2d at 787 ("A tenant has a right not to have his or her possession interfered

with except by lawful process."). The nature of an individual's possessory interest depends on

"the circumstances surrounding the use and occupancy of the property." *Young*, 752 A.2d at

143. Factors for consideration in that determination include a lease agreement, the payment of

rent and other conditions of occupancy between the parties. *Id.* (citing *Anderson v. William J.*

*Davis, Inc.,* 553 A.2d 648, 649 (D.C. 1989)). That said, a showing of full tenancy is not required

to survive a motion to dismiss. *See Gregorio*, 238 F. Supp. 3d 37; *Mitchell*, 890 F. Supp. 2d at

108 (quoting *Sarete*, 871 A.2d at 483).

 Here, Plaintiff alleges facts that plausibly establish that Mr. Ray and Defendants failed to

follow required procedures to allow the U.S. Marshals to evict Plaintiff. Second Am. Compl. ¶

64–65. Construing the facts in the light most favorable to Plaintiff, his landlord, Mr. Ray,

illegally utilized self-help by means of police to effectuate Plaintiff's eviction, which is in direct

violation of D.C. law. *See Mendes*, 389 A.2d at 787 ("[I]n this jurisdiction, the landlord's

common law right of self-help has been abrogated, and the legislatively created remedies for

reacquiring possession are exclusive.").[33] As discussed above, on the facts as alleged, it is

plausible that Defendants arrested Mr. Turpin unlawfully and without probable cause. In the

---

[33] Neither party addresses the legal implications of Mr. Turpin's admitted use of self-help to re-enter the apartment after Mr. Ray allegedly changed the locks, and after the judgment of possession was entered but the writ of restitution had expired. Because the parties have not briefed the issue, and because the precise nature of Mr. Turpin's possessory interest in the property is contested, the Court reserves judgment concerning both the legality of Mr. Ray's alleged action to change the locks and Mr. Turpin's re-entry. The Court notes, however, that, as previously discussed, Mr. Ray lawfully regained possession of the property at the time the housing court entered the judgment of possession, such that Mr. Turpin no longer plausibly had exclusive possession of the apartment.

absence of probable cause to arrest Plaintiff for a criminal offense, the officers should have known to avoid involvement in a landlord-tenant dispute. The Department's own circular acknowledges that officers should not become involved with landlord-tenant disputes because doing so could effectuate an unlawful, self-help eviction. *See Landlord Self-Help Evictions*. The officers' authority in such situations is limited to keeping the peace. *Id.* Because Officers Rowley and Strange intended to and did in fact remove Plaintiff from the premises when they arrested him, Second Am. Compl. ¶ 30–31, 33, 35, potentially without probable cause, their actions contravened these regulations.

Furthermore, U.S. Marshals had not yet evicted Mr. Turpin at the time that Defendants acted, and the writ of restitution had expired. *Id.* ¶¶ 18–19. Because the eviction was not executed before the writ expired, Plaintiff has plausibly alleged that proper court process was not followed when Officers Rowley and Strange removed him from the premises. Defendants' bare allegation that Plaintiff was a "squatter" does not disturb this analysis.[34] As the Court previously discussed, Mr. Turpin alleges that he lived at the apartment with Ms. Miles for ten years without objection from Mr. Ray, *id.* ¶ 9, and paid rent for the eight most recent years, *id.* ¶ 11. After Ms. Miles passed, Mr. Turpin claims that he continued to reside at the apartment without objection from Mr. Ray for an additional four months (implying that Mr. Turpin continued to pay rent). *Id.* ¶¶ 12–13, 15. Plaintiff admits that his name was not on the formal lease agreement. *Id.* ¶ 9. However, taking the facts and inferences in the light most favorable to Mr. Turpin, it is plausible

---

[34] The Court recognizes that Defendants do not explicitly make this argument in the wrongful eviction sections of their briefs. *See* Defs.' MTD 14; Defs.' Reply 6. However, the Court briefly addresses the issue of Plaintiff's possessory interest in the property in light of Defendants' arguments that Plaintiff lacks possessory interest throughout their briefings and given the relevance of these points to the elements of a wrongful eviction claim. *See e.g.*, Defs.' MTD 15–17.

that he had some right to the property even if it is less than tenancy because the "circumstances," including continued rental payments for an extended period of time without objection from Mr. Ray, plausibly suggest that Plaintiff made payments in exchange for housing.  *See Young*, 752 A.2d at 143; *Gregorio*, 238 F. Supp. 3d at 54 ("[T]he D.C. Court of Appeals has left open the possibility that a cause of action for wrongful eviction may . . . be available to an individual who has 'something less than some sort of tenancy."  (quoting *Mitchell*, 890 F. Supp. 2d at 108)).

Accordingly, Plaintiff has pleaded facts that plausibly indicate that Mr. Turpin had some right to the property and that Officer Rowley and Strange's arrest of Plaintiff deprived him of those rights without proper process.  The Court thus denies Defendants' motion to dismiss Mr. Turpin's wrongful eviction claim.

## V.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss the § 1983 claims of excessive force and substantive due process violations and grants in part and denies in part Defendants' motion to dismiss the state law claims for false arrest, malicious prosecution, trespass, and wrongful eviction.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 30, 2020                                    RUDOLPH CONTRERAS
                                                         United States District Judge